**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **KORE CAPITAL CORPORATION**<br>**Plaintiff,**<br>**v.**<br>**STONEMOR OPERATING LLC**<br>**Defendant.** | **CIVIL ACTION NO. 21-3485** |

**MEMORANDUM OPINION**

**Rufe, J.** **June 22, 2022**

Plaintiff, KORE Capital Corporation, brought this action alleging that Defendant, StoneMor Operating LLC, breached its contractual obligations by failing to enforce KORE's security interest against its borrower's accounts and to pay amounts due and owing on those accounts.[1] Defendant has moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Plaintiff has moved to strike Defendant's demand for a jury trial. For the reasons stated below, both motions will be denied.

## I. BACKGROUND[2]

Plaintiff is a lender to Moon Landscaping, Inc., which provides property management and operational services for Defendant pursuant to a Master Services Agreement ("MSA") dated April 2, 2020.[3] In May of 2020, Plaintiff made available a revolving line of credit to Moon pursuant to a Revolving Credit and Security Agreement. This agreement was

---

[1] This action proceeds before the court on diversity jurisdiction. Compl. [Doc. No. 1] at ¶¶ 3–4. KORE is a Virginia corporation. Compl. [Doc. No. 1] at ¶ 1. StoneMor is a Delaware company registered to conduct business in Pennsylvania, with its principal office in Pennsylvania. Compl. [Doc. No. 1] at ¶ 2. The amount in controversy exceeds $75,000. Compl. [Doc. No. 1] at ¶ 3.

[2] The Complaint alleges the following facts, which are assumed to be true for purposes of the motion to dismiss.

[3] Compl. [Doc. No. 1] at ¶¶ 5–6.

subsequently modified by two Loan Modification Agreements, a Forbearance/Loan Modification Agreement, and a Waiver/Loan Modification Agreement (collectively, the "Loan Agreement").[4] As collateral under the Loan Agreement, Moon granted Plaintiff a security interest in Moon's accounts receivable. Plaintiff perfected this interest by recording a financing statement with the Pennsylvania Department of State.[5] The Loan Agreement also granted Plaintiff the right to receive remittances on certain accounts receivable directly from Moon's obligors.[6]

On May 26, 2020, Plaintiff notified Defendant that Moon had assigned its present and future accounts receivable to Plaintiff and that Defendant must thereafter pay all amounts that it owed to Moon into Plaintiff's account ("Notice of Assignment").[7] Defendant acknowledged the assignment on both May 20, 2020 and July 10, 2020.[8] However, on or about July 1, 2020, despite its receipt of the Notice of Assignment, Defendant sent a payment of $1,957,240.33 to Moon instead of to Plaintiff.[9] Between July 15, 2020, and July 1, 2021, Defendant then complied with the Notice of Assignment and made payments directly to Plaintiff.[10] By e-mail on July 15, 2021, Plaintiff reminded Defendant that the assignment was in effect and that Defendant must make payments to Plaintiff.[11] However, Defendant then made two further

[4] Compl. [Doc. No. 1] at ¶ 7.

[5] Compl. [Doc. No. 1] at ¶¶ 8–9.

[6] *See* Ex. 2, Revolving Credit & Security Agreement [Doc. 1-4] § 2.6 (Collections and Remittances), § 4.6 (Notification of Assignment), § 9.1(a) (Enumeration of Remedies) (establishing procedures for notifying certain obligors of Moon's assignment of their obligations and setting forth Plaintiff's right, both before and after default, to receive payments in Moon's stead).

[7] Compl. [Doc. No. 1] at ¶ 10.

[8] Compl. [Doc. No. 1] at ¶ 11.

[9] Compl. [Doc. No. 1] at ¶ 12.

[10] Compl. [Doc. No. 1] at ¶ 13.

[11] Compl. [Doc. No. 1] at ¶ 14.

payments directly to Moon, not to Plaintiff: one on July 16, 2021 in the amount of $1,294,828.00, and one on August 3, 2021 in the amount of $939,498.68.[12] In total, between the three purportedly misdirected payments of July 2020, July 2021, and August 2021, Defendant sent payments totaling $4,191,567.01 to Moon instead of Plaintiff.[13]

Moon defaulted on its loan agreement with Plaintiff and filed for bankruptcy in the United States Bankruptcy Court for the District of Delaware.[14] Plaintiff now brings this action against Defendant alleging that Defendant breached the MSA when it paid Moon instead of Plaintiff.

## II. Motion to Dismiss

### A. Legal Standard

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Complaint "must contain sufficient factual matter . . . to state a claim . . . that is plausible on its face."[15] "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] The Court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the

[12] Compl. [Doc. No. 1] at ¶¶ 15, 17.

[13] Compl. [Doc. No. 1] at ¶ 25. This figure does not include the payment of $200,000 that Plaintiff alleges Defendant diverted on August 3, 2021, after the filing of the Complaint. Resp. Opp. Mot. Dismiss [Doc. No. 5-1] at 2 n.2.

[14] Mot. Dismiss [Doc. No. 3-2] at 1.

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] *Id.* at 663 (citing *Twombly*, 550 U.S. at 556).

complaint, the plaintiff may be entitled to relief."[17] Any attached exhibits "[are] a part of the pleading for all purposes," and will be considered by the Court.[18]

**B. Discussion**

Plaintiff asserts a breach of contract claim against Defendant based on Defendant's decision to pay Moon, instead of Plaintiff, amounts due under the MSA. Plaintiff contends that Defendant was required to pay Plaintiff as the assignee under the Notice of Assignment.[19]

Under Pennsylvania law, a Plaintiff claiming breach of contract must allege "(1) the existence of a contract, including its essential terms, (2) a breach of a duty imposed by the contract, and (3) result[ing] damages."[20] Defendant has moved to dismiss the Complaint, arguing that: (1) there is no privity of contract between the parties, and (2) Plaintiff failed to allege a breach of contract because Defendant fulfilled its obligations under the MSA by remitting payment to Moon.[21]

Defendant first argues that there is no privity of contract between the parties. Although it is correct that Plaintiff was not a party to the MSA, Plaintiff alleges that Moon assigned its payment obligations to Plaintiff and that Defendant was notified of this assignment. Therefore Plaintiff, as assignee, "stands in the shoes of the assignor,"[22] acquiring the "rights and

---

[17] *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny,* 515 F.3d 224, 233 (3d Cir. 2008)).

[18] Fed. R. Civ. P. 10(c) ("[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes").

[19] Compl. [Doc. No. 1] at ¶ 18.

[20] *Ware v. Rodale Press, Inc.,* 322 F.3d 218, 225 (3d Cir. 2003) (brackets and citation omitted).

[21] Mot. Dismiss [Doc. No. 3] at 1–2.

[22] *Christiana Care Health Servs., Inc. v. PMSLIC Ins. Co.*, No. 14-1420, 2015 WL 6675537, at *5 (D. Del. Nov. 2, 2015) (citation omitted); *see also Produce Pay, Inc. v. FVF Distributors Inc.*, 468 F. Supp. 3d 1304, 1316 (S.D. Cal. 2020).

remedies" of Defendant's payment obligations.[23] Defendant argues that it "did not 'sign[] an acknowledgement and assent to assignment, by which it agreed to make payments directly to'" Plaintiff.[24]

However, Plaintiff alleges that Defendant acknowledged and accepted the assignment by making bi-weekly payments directly to Plaintiff for approximately a year.[25] Plaintiff further alleges that Defendant responded to Moon's request to remit payments to Plaintiff by email on July 10, 2020, and agreed to adjust its banking information in order to comply with the assignment.[26] Thus, Plaintiff has alleged that Defendant demonstrated an intention to carry out the assignment as requested by Moon. This is sufficient to state a claim for breach of a contract implied in fact, "where the parties assent to the formation of a contract, but instead of being expressed in words, the intention to infer obligation is inferred from the conduct of the parties in light of surrounding circumstances including a course of conduct."[27]

To bolster its claim for breach of contract, Plaintiff also cites § 9-406(a) of the Uniform Commercial Code ("UCC"), which Pennsylvania has adopted by statute, and which provides that:

> [A]n account debtor on an account . . . may discharge its obligation by paying the assignor until . . . the account debtor receives a notification . . . that the amount due . . . has been assigned and that payment is to be made to the assignee. After receipt of the notification, the account debtor may discharge its obligation by

[23] *Johnson v. Cnty. of Fresno*, 111 Cal. App. 4th 1087, 1096, 4 Cal. Rptr. 3d 475, 482 (2003) (citation omitted); *Aerofund Fin., Inc. v. Elliott*, 11 F. App'x 792, 793–94 (9th Cir. 2001); *F.D.I.C. v. McFarland*, 243 F.3d 876, 888 n.42 (5th Cir. 2001) ("It is generally true that 'an assignee takes all of the rights of the assignor, no greater and no less[.]'").

[24] Reply Supp. Mot. Dismiss [Doc. No. 7] at 2 (quoting *Reading Co-Op. Bank v. Suffolk Construction Co., Inc.*, 464 Mass. 543, 550 (2013)).

[25] Compl. [Doc. No. 1] at ¶¶ 13–14. Plaintiff also cites to *Reading Co-Op. Bank*, arguing that it stepped into the shoes of the assignor once Notice of Assignment was received. Resp. Opp. Mot. Dismiss [Doc. No. 5-1] at 4.

[26] Compl. Ex. 5 [Doc. No. 1-7]; Compl. [Doc. No. 1] at ¶ 11.

[27] *Agere Sys., Inc. v. Advanced Env't Tech. Corp.,* 552 F. Supp. 2d 515, 526 n.3 (E.D. Pa. 2008) (quoting *Highland Sewer and Water Auth. v. Forest Hills Mun. Auth.*, 797 A.2d 385, 390 (Pa. Commw. Ct. 2002)).

paying the assignee and may not discharge the obligation by paying the assignor.[28]

UCC § 9-406 does not require that an account debtor agree to an assignment for the assignment to go into effect.[29] As courts have held in interpreting the UCC, "where an account debtor receives notification of assignment but nonetheless pays only the assignor, the account debtor remains obligated in full under the contract, and upon the assignor's default, the assignee may enforce the account debtor's contractual obligations."[30]

Defendant argues that the UCC does not allow for a private right of action and Plaintiff does not disagree.[31] Instead, Plaintiff cites the UCC to support its claim that Defendant breached a duty owed to Plaintiff under contract.[32] The purpose of a notice of assignment "is to defeat the account debtor's defense that it has satisfied the debt, not to create a freestanding cause of action for disregarding the notice."[33] "[A]n assignee who has provided notice under section 9-406 has other remedies available when an account debtor

[28] UCC § 9-406; 13 Pa. C.S. § 9406(a).

[29] *See Lake City Bank v. R.T. Milord Co.*, No. 18-7159, 2019 WL 1897068, at *3 (N.D. Ill. Apr. 29, 2019) (Defendant's argument that the "claim must fail because . . . accounts receivables were not 'voluntarily assigned' to [Defendant] . . . [and are] without merit [where it] has cited no authority to support this proposition, and . . . UCC § 9-406 makes no such reference."); *United Cap. Funding Grp., LLC v. Remarkable Foods, LLC*, No. 21-3291, 2022 WL 138099, at *3 (D.N.J. Jan. 14, 2022) ("[F]or notice to be sufficient under U.C.C. § 9-406, the account debtor must (1) 'receive notice that the amount due or to become due has been assigned,' and (2) be notified that 'payment is to be made to the assignee.'") (quoting *In re Haley*, 601 F. App'x 900, 911–12 (11th Cir. 2015)).

[30] *Lake City Bank*, 2019 WL 1897068, at *4 (quoting *Reading Coop. Bank v. Suffolk Constr. Co.*, 984 N.E.2d 776, 782 (Mass. 2013)) (denying motion to dismiss where Plaintiff pled facts pursuant to UCC § 9-406 showing it notified account debtor of assignment, that account was properly assigned, and therefore, account debtor was required to pay its account to Plaintiff); *see also United Cap. Funding Grp.*, 2022 WL 138099, at *3 (applying UCC § 9-406, Plaintiff sufficiently pled a breach of contract claim where Defendant had notice of the assignment but did not make payment to Plaintiff).

[31] Reply Supp. Mot. Dismiss [Doc. No. 7] at 1; Reply Opp. Mot. Dismiss [Doc. No. 14] at 2. This interpretation of the UCC aligns with courts across the country. *See Forest Cap., LLC v. BlackRock, Inc.*, 658 F. App'x 675, 680 (4th Cir. 2016) (applying Maryland law); *FPP Sandbox, LLC v. Redstone Commc'ns Grp., Inc.,* No. 18-106, 2018 WL 4259841, at *3 (D. Neb. July 24, 2018) ("Several courts in other states have held that § 9-406 does not provide a private right of action for assignees.") (citations omitted).

[32] *Johnson*, 111 Cal. App. 4th at 1096 ("Once a claim has been assigned, the assignee is the owner and has the right to sue on it.").

[33] *Forest Cap., LLC v. BlackRock, Inc.* 658 F. App'x 675, 681 (4th Cir. 2016).

pays the assignor and refuses to pay the assignee."[34] One of these remedies is a breach of contract claim.[35] Plaintiff has alleged that Defendant had a contractual duty to make the payments to Plaintiff instead of to Moon and breached that duty, causing damages to Plaintiff.[36] Accordingly, the motion to dismiss will be denied.

### III. Motion to Strike

Plaintiff moves to strike Defendant's demand for a jury trial because the MSA includes a provision waiving the right to a jury trial.[37] "Under Pennsylvania law, the right to trial by jury may be waived by express agreement."[38] Federal Rule of Civil Procedure 39(a) provides that a party is entitled to a jury trial unless "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial"[39] or that the parties waived their rights to a jury trial.[40] "Because the 'right of jury trial is fundamental, courts indulge every reasonable presumption against waiver.'"[41] "[A] jury waiver is a contractual right and generally may not be

---

[34] *Id*.

[35] *IIG Capital LLC v. Archipelago, L.L.C.,* 829 N.Y.S.2d 10, 11 (App. Div. 2007).

[36] *See Com. Trading Co. v. Milsan Mills, Inc.,* 19 Pa. D. & C. 3d 64, 68–69 (Pa. Com. Pl. 1981) ("[W]hen an assignee had an account receivable from an assignment and when the account debtor has received notification and reasonable identification of the rights subject to the assignment, the account debtor will be liable to the assignee for having paid the wrong party."). Notably, StoneMor was notified of the assignment and acknowledged its receipt. *See* Compl. Ex. 4 [Doc. No. 1-6] ("[Moon] has assigned its present and future accounts to [KORE]. To the extent that you are now indebted . . . to the Company on an account or a general intangible, payment thereof is to be made payable to us and not the Company or any other entity. Payment in any other fashion will not discharge the obligation."); Compl. Ex. 5 [Doc. No. 1-7] (In response to being notified of the assignment by Moon, Tom Connolly from StoneMor replied: "I'm acknowledging receipt of your banking info[.]").

[37] Pl.'s Mot. Strike [Doc. No. 6] at ¶ 2.

[38] *Acad. Indus., Inc. v. PNC Bank, N.A.,* 54 Pa. D. & C. 4th 424, 2001 WL 1808552, at *2 (Pa. Com. Pl. 2001) (citing *Ottavio v. Fibreboard Corp.,* 617 A.2d 1296, 1299 (Pa. Super. Ct. 1992)) (and then citing *Stock v. Arnott,* 608 A.2d 552, 556 (Pa. Super. Ct. 1992)).

[39] Fed. R. Civ. P. 39(a)(2).

[40] *In re City of Phila. Litig.*, 158 F.3d 723, 726 (3d Cir. 1998) (citing *United States v. Moore*, 340 U.S. 616, 621 (1951)).

[41] *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 222 (3d Cir. 2007) (quoting *Aetna, Inc. Co. v. Kennedy*, 301 U.S. 389, 393 (1937)).

invoked by one who is not a party to the contract."[42] The waiver in the MSA states that "[t]he parties hereby waive trial by jury in any action, proceeding or counterclaim brought by either of the parties hereto against the other on any matters whatsoever arising out of or in any way connected with this agreement."[43] Plaintiff is not one of the parties referred to in this clause. However, Plaintiff claims contractual rights under the MSA as an assignee of Moon's rights to payment under the MSA.[44] Under Pennsylvania law, where assignment of a contractual right is "both sanctioned and contemplated," the assignee "assumes all of the assignor's rights as well as the defenses, set-offs, and counterclaims of the obligor, provided the latter are based on facts existing at the time of the assignment."[45]

As discussed above, a central issue is whether Defendant "sanctioned and contemplated" Moon's assignment of payment rights to Plaintiff. Applying the MSA's jury waiver provisions to this dispute presupposes an answer to this question. Because the right to a jury trial is a fundamental right, its waiver must be made knowingly and voluntarily. Plaintiff was not an original party to the MSA, and the Court cannot conclude on the current record that Defendant

---

[42] *Paracor Fin., Inc. v. Gen. Elec. Cap. Corp.,* 96 F.3d 1151, 1166 (9th Cir. 1996); *see also Hulsey v. West*, 966 F.2d 579, 581 (10th Cir. 1992) (holding nonsignatory guarantor was not bound by a jury waiver provision in loan agreement between the borrower and lender); *Cornell Cap. Partners, L.P. v. Bad Toys, Inc.*, No. 05-5700, 2008 WL 11383803, at *3 n.9 (D.N.J. Jan. 15, 2008) ("[Jury trial] waivers must be narrowly construed. Any ambiguity that arises regarding whether certain claims are within the scope of the waiver 'is to be decided against the waiver.'") (internal citations omitted)).

[43] Pl.'s Mot. Strike [Doc. No. 6] at ¶ 8 (capitalization omitted).

[44] Complaint [Doc. No. 1] ¶¶ 10–11.

[45] *Front St. Dev. Assocs., L.P. v. Conestoga Bank*, 2017 PA Super 125, 161 A.3d 302, 312 (2017) (internal quotations and citations omitted). *See also Crawford Cent. Sch. Dist. v. Com.*, 888 A.2d 616, 619–20 (2005) (internal quotations and citations omitted) ("Under the law of assignment, the assignee succeeds to no greater rights than those possessed by the assignor. An assignee's rights, however, are not inferior to those of the assignor. Ultimately, an assignee stands in the shoes of the assignor.").

agreed to a waiver of a jury trial in any dispute with Plaintiff.[46] Therefore, the Court will deny the motion to strike the jury demand, without prejudice to refiling at a later stage of litigation.

## IV. CONCLUSION

For the reasons stated above, the motion to dismiss and the motion to strike will be denied. An order will be entered.

[46] *Brown & Brown, Inc. v. Cola*, No. 10-3898, 2011 WL 4380445, at *4 (E.D. Pa. Sept. 20, 2011) (citing *Tracinda Corp.*, 502 F.3d at 222).